**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YSA Investments 1, LLC, | Case No. 26-11178-BLS |
| Debtor. | |

**ACRE'S OBJECTION TO USE OF CASH COLLATERAL**
**AND RESERVATION OF RIGHTS**

ACRE Q018 Retention Holder, LLC ("ACRE") hereby objects to use of rents and other cash collateral related to the 727 Lofts property in Jenks, Oklahoma (the "727 Lofts Property") and otherwise reserves all rights as to all matters in this Chapter 11 case (the "Objection"). ACRE submits the Declarations of Daniel Jacobs (the "Jacobs Declaration") and Melissa Joy (the "Joy Declaration") and related exhibits in support of its Objection and states as follows:

**BACKGROUND FACTS**

1.      727 Lofts Best Living, LLC ("Project Entity") entered into a secured loan transaction with ACRE in 2022. The Project Entity is a debtor in a Chapter 11 case recently filed and pending in Dallas (Case No. 26-32779-sgj).

2.      727 Lofts Holdings, LLC ("Pledgor") owns the equity in the Project Entity and pledged that equity to ACRE as part of the secured loan transaction in 2022. The Pledgor is a debtor in a Chapter 11 case recently filed and pending in Dallas (Case No. 26-32780-sgj).

3.      Project Entity and Pledgor (collectively, the "727 Lofts Debtors") initiated Chapter 11 bankruptcy cases by filing voluntary petitions (the "Petitions") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 25, 2026 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of Texas. The two 727 Lofts bankruptcy cases are referred to herein as the Dallas Bankruptcy Cases.

4.     On or about March 10, 2022, 727 Lofts Debtors executed and delivered a Promissory Note in favor of ACRE Credit Investments II LLC, a Delaware limited liability company ("Original Lender") in the original principal amount of $17,000,000.00 (the "Note"). See Jacobs Declaration at Par. 7.

5.     The Note was made pursuant to that certain Loan Agreement dated as of March 10, 2022 (the "Loan Agreement"), executed by Debtors and Original Lender.

6.     To secure payment of the Note and performance of the Loan Agreement, Project Entity executed in favor of Original Lender that certain Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated March 10, 2022 (the "Mortgage").  See Jacobs Declaration at Par. 9.

7.     The Mortgage was recorded on March 11, 2022, as Document Number 2022025541 in the records of the County Clerk of Tulsa County, Oklahoma, with the required mortgage tax paid.

8.     The Mortgage encumbers the real property located in Tulsa County, Oklahoma, commonly known as 727 East Main Place, Jenks, Oklahoma 74037, together with all improvements, fixtures, appurtenances, leases, rents, accounts, proceeds, and other collateral described therein (collectively, the "Property").

9.     The Loan Agreement provided that Debtors would make interest-only monthly payments beginning April 9, 2022, and continuing on each month thereafter, with all unpaid principal, accrued and unpaid interest, and all other amounts due becoming due on March 9, 2025 (the "Initial Maturity Date").

10.     The Loan was also secured by an Assignment of Leases and Rents dated March 10, 2022, pursuant to which Project Entity absolutely and unconditionally assigned to Lender all leases

2

and rents arising from the Property, while retaining only a revocable license to collect rents unless and until default.

11.     The Loan was also secured by a Pledge and Security Agreement (the "Pledge Agreement") whereby Pledgor pledged its 100% membership interest in Debtor (the "Membership Interest") as additional collateral for the Loan. See Jacobs Declaration at Par. 15.

12.     On or about September 15, 2022, Debtors and Original Lender, executed a First Omnibus Amendment to Loan Documents (the "First Omnibus Amendment"), which amended certain provisions of the Loan Agreement relating to the Applicable Interest Rate and the interest-rate benchmark mechanics, confirmed that the Loan Documents remained in full force and effect as modified, and included Debtor's reaffirmations of their obligations under the Loan Documents and waivers of defenses and claims as of the effective date of the First Omnibus Amendment. See Jacobs Declaration at Par. 16.

13.     After origination of the Loan, Original Lender executed and delivered in favor of U.S. Bank Trust Company, National Association, as trustee for the registered Holders of ACRE Multifamily Housing Mortgage Loan Trust 2022-Q018, Multifamily Mortgage Pass-Through Certificates, Series 2022-Q018 ("Assignee") that certain Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated October 20, 2022, which was filed of record in the official land records of the Office of the County Clerk of Tulsa County, Oklahoma on October 27, 2022, thereby assigning to Assignee all of Original Lender's right, title, and interest in and to the Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing encumbering the Property. See Jacobs Declaration at Par. 17.

14.     Under the Loan Agreement, Debtors had an option to extend the Initial Maturity Date, subject to specified conditions, to March 2026. See Jacobs Declaration at Par. 18.

15.     On or about March 7, 2025, Assignee and Debtors entered into a Consent and Loan Modification Agreement (Term Extension) (the "Loan Modification") See Jacobs Declaration at Par. 19.

16.     In the Loan Modification, Assignee consented to a one-time extension of the initial maturity date to March 9, 2026, subject to the conditions set forth in the Loan Modification. See Jacobs Declaration at Par. 20.

17.     In that Loan Modification, Assignee was identified as the current owner and holder of the Loan, the Note, the Loan Agreement, the Security Instrument, and the other Loan Documents. See Jacobs Declaration at Par. 21.

18.     The Loan Modification also reaffirmed that the Loan Documents remained in full force and effect except as specifically modified therein. See Jacobs Declaration at Par. 22.

19.     On or about March 27, 2026, the Assignee executed and delivered to ACRE that certain Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, effective as of March 27, 2026 (the "Assignment"), by which the Prior Holder assigned, transferred, and set over to ACRE all of the Assignee's right, title, and interest, of any kind whatsoever, in and to the subject note or notes and loan documents, including the Mortgage, the Assignment of Leases and Rents, and the related rights of mortgagee, beneficiary, payee, assignee, or secured party, as applicable.  See Jacobs Declaration at Par. 23.

20.     The Assignment was recorded in the official land records of the Office of the County Clerk of Tulsa County, Oklahoma on March 27, 2026, as Document No. 2026026113. See Jacobs Declaration at Par. 24.

21.     By virtue of the foregoing assignments and transfers, ACRE is the current owner and holder of, and successor-in-interest to all rights under, the Note, the Loan Agreement, the

4

Mortgage, the Assignment of Leases and Rents, and the other Loan Documents, and ACRE is entitled to enforce the same. See Jacobs Declaration at Par. 25.

22.     In addition to the Loan Modification, Project Entity executed in favor of Assignee that certain Amendment to Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated effective as of March 26, 2025, and filed of record in the official land records of the Office of the County Clerk of Tulsa County, Oklahoma on April 28, 2025, pursuant to which the Mortgage was amended solely to modify the maturity date to March 10, 2026, while otherwise leaving the Mortgage and the lien and security interests created thereby in full force and effect except as expressly amended. See Jacobs Declaration at Par. 26.

23.     The title materials further show that, on or about October 29, 2025, YSA Investments 1, LLC filed a Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing, recorded on October 31, 2025 as Document No. 2025099636 in the Office of the County Clerk of Tulsa County, Oklahoma, purportedly encumbering the Property to secure obligations stated therein, including an initial principal amount of $2,000,000.00. See Jacobs Declaration at Par. 27.  A true and correct copy of the real estate title materials are attached to the Jacobs Declaration.

24.     No notice was provided to ACRE regarding the filing of this mortgage nor was any consent or intercreditor agreement sought from ACRE by YSA as would be customary for a party recording a second mortgage.  Nor did the Kulick related parties advise ACRE about the second mortgage on the Property.  ACRE only became aware of that YSA mortgage when it ordered updated real estate title work in preparing to pursue a foreclosure.

25.     The title materials show that under a Special Warranty Deed (Deed-in-Lieu of Foreclosure) recorded on June 23, 2026, YSA purported pursuant to a general power of attorney to deed in lieu the Property to itself.  This was not done pursuant to any recognized foreclosure

process, whether it be a judicial foreclosure, a deed in trust procedure or a UCC article 9 foreclosure nor was any notice of this purported remedy provided to ACRE.  See Jacobs Declaration at Par. 28.

26. The title materials further reflect that Empire Protection Services, LLC, filed or claims a mechanic's and/or materialman's lien against the Property pursuant to the Mechanic's or Materialman's Lien Statement recorded in the official land records of the Office of the County Clerk of Tulsa County, Oklahoma as Document No. L2025010102 on September 11, 2025, in the claimed amount of $6,554.00. See Jacobs Declaration at Par. 29.

27. The title materials further reflect that Rasa Floors & Carpet Cleaning, LLC, filed or claims a mechanic's and/or materialman's lien against the Property pursuant to the Mechanic's or Materialman's Lien Statement recorded in the official land records of the Office of the County Clerk of Tulsa County, Oklahoma as Document No. L2025010527 on September 25, 2025, in the claimed amount of $3,398.67. See Jacobs Declaration at Par. 30.

28. Debtors were obligated to pay the outstanding principal balance, all accrued and unpaid interest, and all other amounts due under the Loan Documents on the extended Maturity Date of March 9, 2026. See Jacobs Declaration at Par. 31.

29. Debtor failed to pay the Loan in full on the extended Maturity Date and thereby defaulted under the Note and Loan Agreement. See Jacobs Declaration at Par. 32.

30. On June 8, 2026, ACRE filed a Verified Petition for judicial foreclosure in the District Court In and For Tulsa County, State of Oklahoma (CV-2026-01167), as shown in the title work.  ACRE also sought appointment of a receiver in that Oklahoma state court foreclosure action.  See Jacobs Declaration at Par. 33.  A lis pendens notice was filed in the real property records prior to YSA's purported deed-in-lieu to itself and is attached to the Jacobs Declaration.

31.     As of the June 25, 2026 Petition Date in the Dallas Bankruptcy Case, the amount owed to ACRE is not less than $16,704,064.06 (net of reserves), plus continuing interest and other charges accruing post-petition pursuant to 11 U.S.C § 506(b). See Jacobs Declaration at Par. 34.

32.     Prior to the Dallas Bankruptcy Case, the Project Entity engaged the services of Northmarq to market and sell the Property. For approximately four (4) months prior to the Petition Date, Northmarq conducted a sales process for the Property. To date, Northmarq has not secured a single purchase contract for the Property. See Jacobs Declaration at Par. 35.

33.     ACRE retained Jones Lang LaSalle ("JLL") to market and hold a UCC sale of the Membership Interest. ACRE held the only recorded lien on the Membership Interest.  JLL failed to receive any third-party bids for the membership interest. See Jacobs Declaration at Pars. 36-37.

34.     Pursuant to the Agreed Cash Collateral Order with the Project Debtor in the Dallas Bankruptcy Case, Melissa Joy of ACRE travelled to Oklahoma for an agreed inspection of the building, the units within the building and the related electronic and paper books and records on July 21, 2026.  See Joy Declaration at Par. 8.

35.     Upon arriving at the Project, Ms. Joy was informed that prior management had been removed and replaced. She observed the following:

a.     The substitute manager appointed by YSA reportedly had no books and records available for ACRE to inspect.

b.     The tenants had reportedly been instructed by YSA not to allow access to their units.

c.     ACRE was also denied access to the mechanical areas.

d.     The common areas in the Project had accumulated trash and otherwise reflected lack of maintenance and cleanliness.

e.     There was a single junior person on site for YSA covering both the 727 Lofts Property and the nearby Thrive property.  ACRE would have expected a full team including a senior person for a property management transition.  See Joy Declaration at Par. 8.

36.     YSA did not reach out to ACRE as first mortgagee to discuss the takeover of management impacting ACRE's collateral or mechanisms to ensure the 727 Lofts rents are not diverted or misused.  See Joy Declaration at Par. 9.

37.     ACRE has not received any rent rolls, financial or other reporting from the Property since YSA took over as management.  See Joy Declaration at Par. 10.

38.     Later, Ms. Joy learned that the Debtor Project Entity, through Vesta Real Property, notified tenants at the Property **NOT** to pay rent at this time. See Exhibit "A" to the Joy Declaration.

39.     YSA is directing tenants to pay rent (ACRE collateral) to YSA's management company. See Group Exhibit "B" to the Joy Declaration.

40.     Any loss of revenue will negatively impact the Project and ACRE's mortgage interest in the Project.  See Joy Declaration at Par. 13.

41.     Any diversion of 727 Lofts rents to other properties or for other YSA purposes will negatively impact the Project and ACRE's mortgage interest in the Project.  See Joy Declaration at Par. 14.

42.     Failure to professionally manage and maintain the Project will cause immediate and irreparable damage to ACRE, other creditors, and tenants.  See Joy Declaration at Par. 15.

43.     On July 16, 2026, the Dallas Bankruptcy Court entered an Agreed Interim Order for Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests related to 727 Lofts.  (Dkt. No. 35, attached hereto as Exhibit A) (the "Agreed Cash Collateral Order").  The Agreed Cash Collateral Order in

8

the Dallas Bankruptcy Case contains numerous customary provisions, including, without limitation, information and inspection rights, an agreed budget for use of cash collateral and that the rents and other cash collateral will not be commingled with other assets or properties. The risk of commingling of cash is of particular concern here because it appears that the purported deed in lieu for various Kulick related properties were purported put into the same YSA entity.

44.     ACRE's counsel has reached out to Bayard as Debtor's counsel to address cash collateral matters on Wednesday morning and also to confirm if insurance is in place on the Property. See email chain attached as <u>Exhibit B</u> hereto. No substantive reply has been received as of the filing of this Objection.

**<u>RELIEF REQUESTED</u>**

45.     ACRE requests that all rents and other cash collateral related to 727 Lofts received by YSA to date or hereinafter received (as August rent payments should be coming in this week from some tenant) be escrowed into a separate account consisting of 727 Lofts only funds and not funds from other properties or YSA activities.

46.     ACRE requests that YSA be prohibited from using any rents or other cash collateral absent any cash collateral order entered in this case. ACRE remains available to discuss a possible cash collateral order with YSA's counsel.

47.     Under Section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Absent consent, "the court … shall prohibit or condition such use … as is necessary to provide adequate protection" of a secured creditor's interest in such cash collateral. 11 U.S.C. § 363(e). The debtor "has the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(p)(1).

9

48.    Absent ACRE's consent, YSA cannot use cash collateral without court authorization. *See In re Vienna Park Properties*, 976 F.2d 106, 114 (2nd Cir. 1992) (holding that a debtor may not use Cash Collateral without secured creditors' consent or court authorization); *In re Park View Apt, LLC,* No. 24-11663 (LSS), 2026 WL 1674590, at *6 (Bankr. D. Del. June 9, 2026) (debtor cannot use cash collateral absent consent of each entity having an interest in it or court authorization).

## RESERVATION OF RIGHTS

49.    ACRE otherwise reserves all other rights as to this bankruptcy case and all other matters, including, without limitation, to seek dismissal as a bad faith filing, appointment of a Chapter 11 Trustee, lift stay relief or other relief.

50.    ACRE also asserts that the purported deed-in-lieu of the 727 Lofts Property by YSA to itself was legally ineffective and/or avoidable.

*-Remainder of Page Intentionally Left Blank-*

Dated:  July 30, 2026
       Wilmington, Delaware

                    **LEWIS BRISBOIS BISGAARD & SMITH LLP**

                    */s/ Scott D. Cousins*

Scott D. Cousins (DE No. 3079)
Rae Ra (DE No. 7253)
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
Telephone: (302) 985-6000
Email: Scott.Cousins@lewisbrisbois.com
       Rae.Ra@lewisbrisbois.com

-and-

**DENTONS US, LLP**
Robert E. Richards, Esq. (*pro hac vice* pending)
Samantha Siegien (*pro hac vice* pending)
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Email: robert.richards@dentons.com
       samantha.siegien@dentons.com

*Counsel to ACRE Q018 Retention Holder, LLC*

11