## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YSA INVESTMENTS 1, LLC. | Case No. 26-11178 (BLS) |
| Debtor.[1] | **Hearing Date: August 14, 2026 at 11:00 a.m. (ET)**<br>**Objections Due: At the Hearing** |

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL,
(II) FINDING THAT THE PREPETITION SECURED LENDERS ARE
ADEQUATELY PROTECTED, AND (III) SCHEDULING A FINAL HEARING**

YSA Investments 1, LLC, the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves the Court (the "Motion") for entry of interim and final orders, the interim form of which is attached hereto as **Exhibit C**, (the "Interim Order"), (a) authorizing the Debtor's use of cash collateral, (b) finding that the Prepetition Secured Lenders (as defined herein) are adequately protected, and (c) scheduling a final hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Order", and together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections 105(a), 361, 363(c), and 507 of chapter 11 of title 11 of the United States Code, §§ 101–1532, as amended (the "Bankruptcy Code"). In support of this Motion, the Debtor relies upon and fully incorporates the *Declaration of Parker Detweiler in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"), filed concurrently herewith and respectfully represents as follows:

---

[1] The address of the Debtor is 848 Brickel1 Avenue, Suite PH5, Miami, Florida 33131. The last four digits of the Debtor's federal tax identification numbers is 3352.

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

2.      Venue of this Chapter 11 Case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for relief requested herein are sections 105, 361, 363, and 507 of the Bankruptcy Code, Rules 2002, 4001, 6003, 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 4001-2.

<u>**BACKGROUND**</u>

4.      On July 28, 2026 (the "<u>Petition Date</u>"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtor is authorized to continue to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case by the Office of the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>").

**A.      The Cash Collateral**

6.      The Debtor is a privately held limited liability company that owns 29 rental properties.  The Debtor uses an unaffiliated property manager, Capital Assets, to manage 10 of

these properties that are located in Oklahoma (the "Properties"). These 10 Properties are called: Thrive Jenks, Lakeside Place, Villas at Midtown, Village Creek, Barcelona Apartments, Shoreline, 727 Lofts, One Eton Square, Riverpark at Kensington, and 23 East. As set for on **Exhibit A** attached hereto, the Properties are subject to first-priority liens of the following lenders: Bancorp, Berkadia, BMO, CREO QRS VC LLC, CREO QRS NP LLC, ACRE Q018 Retention Holder, LLC, Federal National Mortgage Association ("Fannie Mae"), and Stride Bank (collectively, the "Prepetition Secured Lenders"). In the normal course of business, Capital Assets utilizes each Property's rental income ("Cash Collateral") to pay for each of the Property's expenses.

7. On July 20, 2026, the Debtor, through Capital Assets, took possession of the Properties from the prior operator. The Debtor took possession of the Properties because the prior operator permitted unsafe living conditions at the Properties, including non-working air conditioners during the Oklahoma summer heat, a lack of trash service, and numerous other defunct items. As a result, the Properties suffer from significant deferred maintenance and down units.

8. Additional information regarding the Debtor and the commencement of this Chapter 11 Case is set forth in the First Day Declaration.

9. On July 30, 2026, Prepetition Secured Lender ACRE Q018 Retention Holder filed its Objection to Use of Cash Collateral and Reservation of Rights [D.I. 7] to the use of rents and other cash collateral related to the Debtor's 727 Lofts property in Jenks, Oklahoma, absent any cash collateral order entered in this case.

10. On July 31, 2026, Prepetition Secured Lenders CREO QRS VC LLC, CREO QRS NP LLC likewise filed their Notice of Objection and Reservation of Rights to the Use of Cash

Collateral [D.I. 12] to the use of rents and other cash collateral related to the Debtor's "CREO Properties" absent any cash collateral order entered in this case.

**A.     The Debtor's Immediate Need to Use Cash Collateral**

11.     The orderly continuation of the Debtor's efforts to preserve assets and maximize the value of its estate is largely dependent upon its ability to regularly use Cash Collateral. Without the liquidity provided by use of Cash Collateral, the Debtor's objective of maintaining the value of its assets for the benefit of its creditors will fail without a fair opportunity to achieve the purposes of the chapter 11 process. Absent authority to use Cash Collateral, the Debtor will not be able to maintain the Properties, which in turn would cause an immediate and pronounced deterioration in the value of the Debtor's assets. Moreover, absent authority to use Cash Collateral, the Properties' existing tenants will suffer and the value of the Prepetition Secured Lenders' collateral will decline as occupancy decreases and deferred maintenance continues, at the expense of the residents, the Debtor's estate, and its creditors. Thus, the Debtor's access to Cash Collateral is absolutely necessary to preserve and maximize value for the benefit of all of the Debtor's stakeholders.

12.     Without access to liquidity, the Debtor's ability to navigate through the chapter 11 process will be jeopardized, to the detriment of all of the estate's stakeholders. As a result, the Debtor has an immediate need to use Cash Collateral to ensure liquidity at the outset of this Chapter 11 Case.

13.     As demonstrated by the budgets for each of the Properties that are attached hereto as Exhibit 1 (as modified, and together with any subsequent budget, in each case as approved by the respective Prepetition Secured Lender, the "Budgets"), the Debtor has sufficient cash on hand or anticipated cash flow to continue to pay expenses, such as management fees, taxes, utilities, insurance, and other costs associated with ongoing operations of the Properties without an

4

immediate need for additional short-term financing beyond use of Cash Collateral. The Budgets contains categories of anticipated disbursements during the time period that the Budgets cover. The Debtor believes that the Budgets include all reasonable, necessary, and foreseeable expenses to be incurred in connection with Properties during this Chapter 11 Case. The Debtor will use Cash Collateral only for the operations and repairs of the Properties, including to address the significant deferred maintenance and down units. The Debtor believes that such use of Cash Collateral will increase the value of the Prepetition Secured Lenders' collateral well beyond the Cash Collateral spent.

14. The following chart contains a summary of the material terms of the Proposed Order, in accordance with Bankruptcy Rule 4001(b)(1) and Local Rule 4001-2.

| Material Term: | Summary Description: |
| --- | --- |
| **Parties with an Interest in Cash Collateral:**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | The Prepetition Secured Lenders, which include Bancorp, Berkadia, BMO, ACRE Q018 Retention Holder, LLC, CREO QRS VC LLC, CREO QRS NP LLC, Fannie Mae, and Stride Bank. |
| **Cash Collateral to Be Used and Amount**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Rule 4001- 2(a)(i)(A)* | The Debtor is authorized to use Cash Collateral in accordance with the Budgets subject to a weekly variance not to exceed 20% of the budgeted amounts of total cash disbursements for such week by category and in the aggregate.<br><br>*See* Interim Order, at ¶¶ 2 and 3. |
| **Pricing and Economic Terms**<br><br>Local Rule 4001-2(a)(i)(B) | -None- |
| **Provisions That Specifically Limits the Court's Power or Discretion to Enter Future Orders in the Case**<br><br>Local Rule 4001-2(a)(i)(C) | -None- |

| Material Term: | Summary Description: |
|---|---|
| **Funding of NonDebtor Affiliates with Cash Collateral** <br><br> Local Rule 4001-2(a)(i)(D) | -None- |
| **Material Conditions to Closing and Borrowing, Including Budget Provisions** <br><br> Local Rule 4001-2(a)(i)(E) | The Debtor may use the Cash Collateral only to pay the amount and type of expenses set for in the Budgets during the period covered by the Budgets in which such expenses are projected to be paid, subject to a weekly variance not to exceed 20% of the budgeted amounts of total cash disbursements for such week by category and in the aggregate. <br><br> *See* Interim Order, at ¶¶ 2 and 3. |
| **Carveout** <br><br> Local Rule 4001-2(a)(i)(F) | -None- |
| **Postpetition Liens on Unencumbered Assets** <br><br> Local Rule 4001-2(a)(i)(G) | -None- |
| **Sale or Plan Milestones** <br><br> Local Rule 4001-2(a)(i)(H) | -None- |
| **Prepayment Penalty or Limitation on Refinancing** <br><br> Local Rule 4001-2(a)(i)(I) | -None- |
| **Joint Liability of the Debtors** <br><br> Local Rule 4001-2(a)(i)(J) | -None- |
| **Limitation on Use of Estate Funds to Investigate Liens and Claims** <br><br> Local Rule 4001-2(a)(i)(L) | -None- |
| **Termination** <br><br> Local Rule 4001-2(a)(i)(M) | -None- |
| **Cross Collateralization** <br><br> Local Rule 4001-2(a)(i)(N) | -None- |
| **Roll-Up of Prepetition Debt** <br><br> Local Rule 4001-2(a)(i)(O) | -None- |

| Material Term: | Summary Description: |
|---|---|
| **Priming of Prepetition Liens**<br><br>Local Rule 4001-2(a)(i)(P) | -None- |
| **Debtor's Stipulations**<br><br>Local Rule 4001-2(a)(i)(Q) | -None- |
| **Approval of Underlying Loan Agreement Terms**<br><br>Local Rule 4001-2(a)(i)(R) | -None- |
| **Modification of Automatic Stay Following Event of Default**<br><br>Local Rule 4001-2(a)(i)(S)<br><br>**Interim Order, ¶9** | -None- |
| **Limitation on Action During Remedies Notice Period**<br><br>Local Rule 4001-2(a)(i)(T) | -None- |
| **Liens on Avoidance Actions**<br><br>Local Rule 4001-2(a)(i)(U) | -None- |
| **Section 552 Equities of the Case Waiver**<br><br>Local Rule 4001-2(a)(i)(W) | -None- |
| **Limitation on Marshalling**<br><br>Local Rule 4001-2(a)(i)(X) | -None- |
| **Adequate Protection:**<br><br>*Bankruptcy Rules 4001(b)(1)(B)(iv)* | The Debtor does not propose to provide the Prepetition Secured Lenders with any additional adequate protection, other than adhering to the Budget. |

## **RELIEF REQUESTED**

15.     Pursuant to sections 105, 361, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 4001-2, the Debtor requests the entry of an Interim Order substantially in the form attached hereto, (a) authorizing the Debtor's use of Cash

Collateral, (b) finding that the Prepetition Secured Lenders are adequately protected in connection with the proposed use of Cash Collateral, to the extent so entitled, and (c) scheduling a final hearing to consider entry of an order granting the relief requested in the Motion on a final basis.

### I.     Debtor's Use of Cash Collateral

16.     Section 363 of the Bankruptcy Code governs the Debtor's use of Cash Collateral.[2] Under section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

17.     Here, the Prepetition Secured Lenders have not yet consented to the Debtor's use of the Cash Collateral. However, the Debtor's ability to continue its asset preservation efforts and to administer this Chapter 11 Case in an orderly manner is dependent on its ability to fund the postpetition expenses set forth in the Budgets. Use of the Cash Collateral is essential to the Debtor's ability to maintain the Properties and pay their expenses. The Debtor will not use Cash Collateral for any expenses outside of the Properties themselves, including for professional fees in this Chapter 11 Case.

### II.     The Prepetition Secured Lenders are Adequately Protected

18.     A debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e). "The

---

[2] Section 363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a nonexhaustive list of acceptable forms of adequate protection including other relief resulting in the indubitable equivalent of the secured creditor's interest in such property. *See* 11 U.S.C. § 361.

19. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. *See*, *e.g.*, *In re Swedeland Dev. Grp. Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 1393, 1396–97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1995) (same); *In re Senior Care Props., Inc*., 137 B.R. 527, 528 (Bankr. N.D. Fla. 1992) (same); *In re Family Place P'ship*, 95 B.R. 166, 171 (Bankr. E.D. Cal. 1989); *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978) and H.R. Rep. No. 595, 95th Cong., 2d Sess. 339 (1978) (acknowledging that the statute confers upon "the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved.").

20. The principal purpose of adequate protection "is to assure that the lender's economic position is not worsened because of the bankruptcy case." *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006). Furthermore, the concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from

9

diminution in the value of its interest during the chapter 11 reorganization."); *see also In re Cont'l Airlines, Inc.*, 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (noting that a secured party is only entitled to adequate protection to the extent the collateral declined in value).

21.    Importantly, adequate protection exists when a debtor seeks to utilize cash collateral in the form of rents or other income to maintain or improve a debtor's property, as the Debtor seeks to do here.  *See, e.g.*, *In re Mocco*, 176 B.R. 335, 348 (Bankr. D.N.J. 1995) (finding that secured creditor was provided with the "indubitable equivalent" of the value of its cash collateral by the use of assigned rents to fund a sewer hook-up to improve the property and therefore the creditor was adequately protected); *In re Donato*, 170 B.R. 247, 256 (Bankr. D.N.J. 1994) (permitting the use the rents to pay the operating expenses of mortgaged property and finding that "the use of cash collateral to pay the operating expenses of the real property in question adequately protects the interest of secured lenders, however, even where the creditor is undersecured." (collecting cases)); *In re Murray*, No. 10-10143-8-SWH, 2011 WL 5902623, at *6 (Bankr. E.D.N.C. May 24, 2011) (finding creditor adequately protected where adequate protection payments from rental proceeds of property to be used for operational and maintenance expenses); *Federal Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship.*, 153 B.R. 204, 214 (N.D. Ill. 1993) ("[T]he required adequate protection of Rents is satisfied to the extent the Debtor reinvests the rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased.") (citing *In re Constable Plaza Associates,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991)); *In re Las Vegas Monorail Co.*, 429 B.R. 317, 341 (Bankr. D. Nev. 2010) (holding that debtor's use of cash it generated from operations of its monorail are itself a form of adequate protection "because [debtor's] continued investment in, and operation of, the monorail will increase, or at least maintain, the collateral's value").

22. In this Chapter 11 Case, the Prepetition Secured Lenders are adequately protected because without the Debtor's use of the Cash Collateral, it is extremely unlikely that the Debtor can maintain the Properties secured by the Prepetition Secured Lenders or remain in business and successfully reorganize. In addition, the Debtor will comply with the Budgets and shall not make any disbursements other than pursuant to the Budgets, subject to applicable variances. The Debtor will utilize the rents of the Properties to pay for their expenses. Thus, the Cash Collateral will be used strictly to maintain and increase the value of the Prepetition Secured Lenders' collateral. Furthermore, each Property's Cash Collateral will be kept in a segregated property-level account maintained by the third-party management firm Capital Assets. The Cash Collateral will be used only for the respective Property and all unused Cash Collateral will remain in the respective property-level accounts. The Debtor will also provide a full accounting of, and regular updates on, the use of Cash Collateral.

23. Moreover, Judge Jernigan, in the Louis Investments, LLC case in the Northern District of Texas Bankruptcy Court, noted her confidence in the Capital Assets team as caring property managers. *See Louis Investments, LLC v. YSA Investments 1, LLC*, Adv. No. 26-03071-SGJ, July 28, 2026 Hearing Transcript at 141:17-142:3, attached hereto as **Exhibit B** (Judge Jernigan identifying Capital Asset's President Greg Wright and Property Vice President of Property Management Jennifer Johnson as among the three witnesses she had the most confidence in and stating "I feel like there are property management people who really, care, okay? Property management people who care: Mr. Wright and . . . Jennifer Johnson.").

24. Because the Cash Collateral will be used for the operations and repairs of the Properties, including to address the significant deferred maintenance and down units, the Debtor believes that such use will increase the value of the collateral well beyond the Cash Collateral

11

spent. Without the use of Cash Collateral, existing tenants will suffer and the value of the collateral will decline as occupancy decreases and deferred maintenance continues, at the expense of the residents, the estate, and the creditors.

25. Thus, the Debtor submits that the proposed use of Cash Collateral is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interest of the Debtor, its estate, and all parties in interest. Under the circumstances of this Chapter 11 Case, the Prepetition Secured Lenders are adequately protected, as evidenced by the fact that the Debtor's will continue to use the Cash Collateral to maintain and pay the expenses for the Properties.

26. Based on the foregoing, the Debtor respectfully submits that entry of the Interim Order authorizing the interim use of Cash Collateral and scheduling a final hearing to approve the use of Cash Collateral on a final basis is necessary and appropriate.

**REQUEST FOR FINAL HEARING**

27. Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(c), the Debtor requests that the Court (i) set a date for the final hearing to consider entry of the Final Order and (ii) fix the date and time prior to the final hearing for parties to file objections this Motion.

**IMMEDIATE RELIEF IS NECESSARY TO AVOID
IMMEDIATE AND IRREPARABLE HARM**

28. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

29. Thus, the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtor to use Cash Collateral of the Prepetition Secured Lenders,

to (i) finance the Chapter 11 Case in accordance with the Budget, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest.

## RELIEF UNDER BANKRUPTCY RULE 6004(H) IS APPROPRIATE

30. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtor requires immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

31. The Debtor will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the 20 largest unsecured claims against the Debtor; (iii) the Prepetition Secured Lenders; and (v) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

## CONCLUSION

The Debtor respectfully requests that this Court enter the Cash Collateral Orders authorizing the Debtor's interim and final use of cash collateral and granting such other and further relief as the Court deems just and proper.

Dated: August 10, 2026
      Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Ericka F. Johnson*
Ericka F. Johnson (No. 5024)
Kevin G. Collins (No. 5149)
Daniel N. Brogan (No. 5273)
Steven D. Adler (No. 6257)
Ashly L. Riches (No. 7256)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Email: ejohnson@bayardlaw.com
      kcollins@bayardlaw.com
      dbrogan@bayardlwa.com
      sadler@bayardlaw.com
      ariches@bayardlaw.com

*Proposed Counsel to the Debtor and*
*Debtor in Possession*