**Exhibit B**

**Louis Investments, LLC July 28, 2026 Hearing Transcript Excerpts**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

BEFORE THE HONORABLE STACEY G. JERNIGAN, CHIEF JUDGE

| | |
|---|---|
| In Re: | ) Case No. 26-33110-sgj11 |
| | ) |
| LOUIS INVESTMENTS, LLC, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| LOUIS INVESTMENTS, LLC, | ) Adversary Proceeding |
| | ) No. 26-03071-sgj |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CERTIFIED TRANSCRIPT |
| YSA INVESTMENTS 1, LLC, | ) |
| | ) |
| Defendant. | ) July 28, 2026 |
| | ) Dallas, Texas |

Transcript of the afternoon proceedings, from 1:14 o'clock p.m. to 5:44 o'clock p.m., of Day 2 of the evidentiary hearing on the Plaintiff's motion for a preliminary injunction.

Appearances:

For the Plaintiff:          Douglas J. Harris
                            Leib M. Lerner
                            Lerner Harris Law
                            9350 Wilshire Boulevard, Suite 203
                            Beverly Hills, California  90212
                            (310) 742-5590

For the Defendant:          Jerry L. Hall
                            Dechert LLP
                            Three Bryant Park
                            1095 Avenue of the Americas
                            New York, New York  10036
                            (212) 698-3500

                            Marcus Alan Helt
                            Dechert LLP
                            2651 North Harwood Street, Suite 120
                            Dallas, Texas  75201
                            (214) 453-4913

them, any sanction on them, if that's what you mean?

MR. LERNER: No, I agree. But I'm not sure that you can even hear the evidence for them to finish. So — so which meant that my agreement, which was that I was going to take their — that I was going to take their direct and cross of Mr. Diveroli means that I wasn't given that opportunity. So what I'm saying is, is that if there is an orderly process for a motion to dismiss may be filed by the U.S. Trustee and for us to be able to respond accordingly, then that would be fair to the debtor. The debtor has a right to file — the debtor had a right to file bankruptcy, has a right —

THE COURT: A right? A right? A right? What are you saying? Define what you mean by right?

MR. LERNER: The Bankruptcy Code provides for entities to file for bankruptcy and — and — and to utilize the Bankruptcy Code for the protections that it provides. This is not the first debtor — Your Honor is one of the most experienced jurists in the country. This is not the first debtor that has a hard time. It's not the first debtor with MCA loans.

THE COURT: Of course not.

MR. LERNER: So —

THE COURT: Of course not.

MR. LERNER: It —

THE COURT: This is the place for the honest but unfortunate debtor.

MR. LERNER: That's right. And what's — and — and what —

THE COURT: They are very often in chaos. And we want to help, we want to solve problems, as Mr. Helt said. But I have heard two days of evidence suggesting conflicts, mismanagement, not being a responsible corporate citizen.

MR. LERNER: And — and —

THE COURT: And I could maybe even worry about breaches of fiduciary duty, because clearly these entities were in the zone of insolvency at some point. And what happens then, we all know what happens then, your fiduciary duties must then focus on creditors, not on equity.

MR. LERNER: And —

THE COURT: And this seems to have been all about focusing on equity recently.

MR. LERNER: So —

THE COURT: You know which witnesses I had the most confidence in today? I mean he's probably gone, the guy, Greg Wright from — is he still here? There you are. I'm going to be honest — well, him and actually the other property management people. I feel like there are property management people who really care, okay? Property management people who care: Mr. Wright and...

MR. LERNER: Ms. Butterfield?

THE COURT: ...and Ms. Butterfield, and I forget —

Jennifer Johnson.  But beyond that, when it gets to the corporate human beings, I don't — I don't even know who to trust.

          MR. LERNER:  So all I would ask is, is that — I'm not sure if you share my belief that I don't think, because this is a complaint against YSA, now that they're in — they filed, that we can actually complete the hearing.  What I would ask is — is that —

          THE COURT:  We can continue this hearing and let a Chapter 11 trustee stand in the shoes of Lois Investments and the other debtors.  It's not cutting off anything other than who has standing.

          MR. LERNER:  That's — that's true, Your Honor, although Mr. Kulick and the other — the other Lois Investments connected people did testify about all of the things they did, including the property management efforts that they have made.  So what I would — what I would again ask is that at least the debtor be permitted to respond.  There's no life safety issues that are happening, there is no testimony of that —

          THE COURT:  You know what, —

          MR. LERNER:  Yes.

          THE COURT:  — the story keeps changing.  I set an expedited hearing because I thought there were health and safety issues perhaps being engaged in by YSA and their property manager.

MR. LERNER: That the — well, they hired a property manager, but they took — the emergency was is that they took over these properties. And that needed to be rectified and that's why we filed the TRO. The story has not changed, Your Honor, I respectfully — the — but —

THE COURT: What about the eye-popping police report I was told I was going to see? And I said something like, what, was somebody murdered, or I said something very flippant.

MR. LERNER: Then —

THE COURT: The eye-popping —

MR. LERNER: Yeah.

THE COURT: — police report was an absence-of-information report.

MR. LERNER: Correct, correct. And that was — and to us, that was eye-popping. I'm still —

THE COURT: Wait till you see the police report. That misled me. That made me think, boy, oh, boy, there must be something really bad about that altercation going on the property.

MR. LERNER: I'm — I am embarrassed to hear that, Your Honor. I would never have thought that that — anything that I was saying would be taken that way and I apologize if that's the truth. The — again, I — my understanding, and Mr. Diveroli did testify about it, about all of the efforts that he made to get the full — to get the full police report. And all of those