# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YSA Investments 1, LLC, | Case No. 26-11178-BLS |
| Debtor. | |

## ACRE'S PRELIMINARY OBJECTION TO PROPOSED INSIDER DIP FINANCING

ACRE Q018 Retention Holder, LLC ("ACRE") hereby files this preliminary objection (the "Preliminary Objection") to the *Motion of the Debtor for Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing, (II) Granting Security Interests and Super-Priority Administrative Expenses Status, (III) Modifying the Automatic Stay, (IV) Authorizing the Use of Cash Collateral, (v) Granting Adequate Protection, (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Dkt. No. 56] (the "Insider DIP Financing Motion").

ACRE incorporates by reference its previously filed pleadings and sworn declarations and related documents and exhibits (the "Prior ACRE Pleadings"):

(i) *ACRE's Objection to Use of Cash Collateral and Reservation of Rights* (Dkt. No. 7) (the "Cash Collateral Objection") along with the Declaration of Daniel Jacobs (the "Jacobs Declaration") (Dkt. No. 8) and Declaration of Melissa Joy (the "Joy Declaration") (Dkt. No. 9) and related exhibits submitted on July 30, 2026 in support of the Cash Collateral Objection,

(ii) *ACRE's Emergency Motion for Relief from the Automatic Stay (Dkt. No. 27)* (the "ACRE Lift Stay Motion") including the Declaration of Brett Rosenberg of Jones Lang LaSalle (the "JLL Rosenberg Declaration") summarizing the UCC sale process as filed in the District Court In and For Tulsa County, State of Oklahoma, (CV-2026-01167) (the "Oklahoma State Court Case") and other exhibits filed in this Court in support of the

ACRE Lift Stay Motion and ACRE's related *Motion for Entry of an Order Shortening Notice and Setting an Expedited Hearing Emergency Relief from the Automatic Stay* (Dkt. No. 29).

(iii)    *ACRE's Joinder in Emergency Motion to Dismiss Chapter 11 Case of YSA Investments I, LLC or Alternatively, to Transfer Venue to the Northern District of Texas* (Dkt. No. 56).

In further support of this Preliminary Objection to the Insider DIP Financing Motion, ACRE states as follows. Defined terms used but not otherwise defined in this Preliminary Objection shall have the meaning set forth in ACRE's above-referenced pleadings already on file in this YSA case.

### Preliminary Objection

1.      There is no need to consider or approve the Insider DIP Financing Motion on short notice this Friday, August 14, 2026. The primary purpose of the insider DIP Financing (the "Insider DIP Financing") is to pay for Chapter 11 professional fees. No professional retentions have been approved by this Court yet. As of the filing of this Preliminary Objection, no applications to retain counsel or other professionals has been filed, including for Bayard which has been acting as counsel for the Debtor in this case and also appearing for YSA in the Dallas Bankruptcy Case for over two weeks now.[1] No interim compensation procedures have been proposed yet. No professional fees would be payable for at least a couple of months. Nor are any of the other proposed uses of the Insider DIP Financing an emergency. There is no reason to

---

[1] Having the applications to retain counsel and any other professional on file of public record with full disclosure declarations is especially important in this case including, without limitation, to understand each proposed professional's connections with (i) the Debtor's principal Aharon (Efraim) Diveroli and his related entities ("Diveroli") including pre-petition, (ii) John Spurrier and STG LLC as the self-selected independent manager (the "Proposed Independent Manager") (See Paragraph 5 of First Day Declaration of Peter Detweiler (the "YSA First Day Declaration")), (iii) Mr. Detweiler the first day declarant himself ("Detweiler"), and (iv) first lien holders, mechanics liens and other creditors of either the properties or of YSA (including any who may be clients of the proposed professional's firm) as well as any prepetition unpaid fees and/or preference exposure of the proposed professional firm.

approve this Insider DIP Financing on Friday and as discussed below, there are numerous issues with this proposed financing that need to be addressed on a careful and non-rushed basis.

2. The Debtor is not an operating business. For instance, the Debtor has no officers or employees (Paragraph 6 of the First Day Declaration) and the Debtor does not own or lease any office space (Paragraph 7 of the First Day Declaration). It's a real estate related case. Therefore, there is no reason for a rushed DIP Financing hearing here.

3. YSA Investments I, LLC ("YSA" or the "Debtor") has created a mess here for ACRE and the first mortgagees of other properties. Whether by design or by carelessness in a rush effort to file the purported deeds in lieu, YSA purported to put title to various properties required to be single asset real estate in separate legal entities into the same legal entity in violation of ACRE's Loan Documents and normal single asset real estate financing norms. And now YSA is trying to build on that mess by purporting to have this Insider DIP Financing encumber all of those properties regardless of whether the specific property actually needs DIP Financing funds (versus being self-sufficient with cash collateral) or benefits from some or all of the proposed DIP Financing advances.

4. In particular, the Insider DIP Financing Motion and First Day Declaration does not demonstrate that DIP Financing funds (versus just cash collateral usage from collected incoming rents) are needed for the 727 Lofts Property, especially on an emergency basis. As part of consideration of any DIP Financing for YSA, there should be a detailed property by property evaluation whether any such financing is needed. Nor has YSA made any request to ACRE for DIP Financing for any projected shortfall related solely to the 727 Lofts Property (ACRE does not believe there is any such shortfall, at least for the next few months).

5. The Debtor has multiple conflicts here, especially with Mr. Diveroli, Mayflower Asset Recovery Systems LLC the proposed insider DIP lender ("Mayflower" or the "Insider DIP Lender") and the newly disclosed pre-petition "secured debt from affiliates, including KingBird Ventures LLC ("KingBird") whose rights were [allegedly] assigned to Mayflower . . . in the approximately amount of $467,000" (the "Asserted Insider Debt") (Paragraph 9 of the First Day Declaration). ACRE has requested from Bayard all documents related to the Asserted Insider Debt and has not received those documents yet or a commitment as to a time frame to provide those documents. See Exhibit A hereto. Time is needed for discovery and depositions regarding matters such as (i) the negotiations and terms of the Insider DIP Loan, (ii) the pre-petition Asserted Insider Debt, (iii) background on KingBird and (iv) background on Mayflower. No Insider DIP Financing should be approved until relevant documents are provided and appropriate discovery and depositions have taken place.

6. Nor has Bayard provided any legal authority or documents or sworn declarations under oath in support of its representations to this Court that (i) valid deed in lieu transaction occurred for the properties including the 727 Lofts Property or (ii) YSA held valid pledges of the equity in any Kulick related entity (including 727 Lofts Holdings LLC equity in 727 Lofts Best Living LLC which was already subject to a prior pledge in favor of ACRE) and foreclosed on those equity interests under a valid and properly noticed "UCC Article 9 process." ACRE continues to ask for that detail and the actual documents and notices (if they exist) supporting those assertions. See Exhibit A hereto. Representations of counsel in a pleading or at a hearing are not competent admissible evidence.

7. The whole premise for this YSA bankruptcy appears to be that YSA validly owns the properties, can validly pledge those properties as collateral for a DIP financing and can run a

sale process to sell the properties. If that premise is wrong as ACRE believes is the case, this bankruptcy case is going nowhere. As stated in the Prior ACRE Pleadings, ACRE believes that at most YSA is a second mortgagee on 727 Lofts if that transaction is not avoidable. Nothing in the Delaware Chancery Court decision blessed or pre-approved YSA giving a deed in lieu to itself or foreclosing on equity pledges in Kulick related entities, especially without required notices, time periods and processes required under UCC Article 9. Those remedies simply do not exist for any lender, including YSA. If they did, there would be no foreclosures or no receiverships – lenders would just instantly grab their collateral without notice or process upon any asserted default.

8. YSA and its professionals have apparently recognized the conflicts raised herein given they noted in paragraph 5 of the First Day Declaration:

The Debtor is a single-member Delaware limited liability company that is manager-managed. Intercharge Claims Group LLC is the sole member of the Debtor. The sole manager of the Debtor is Aharon Diveroli. On or about August 5, 2026,[2] the Debtor resolved to retain STG, LLC, who has designated John Spurrier as an independent manager (the "Independent Manager"), subject to Court approval,[3] to make Major Decisions for the Debtor. "Major Decisions"" means any decision of the Debtor to: (i) make any expenditure or payment, or any series of related expenditures or payments, in excess of $100,000; (ii)

---

[2] Note the appointment of the Proposed Independent Manager was post-petition. Therefore the Proposed Independent Manager was not involved in any of the pre-petition actions by YSA including the asserted pre-petition loan from Kingbird or purported deeds in lieu. No detailed facts (or sworn declaration from the Proposed Independent Manager) are given on the Proposed Independent Manager's involvement with searching for alternative DIP financing, considering cash collateral usage in lieu of DIP financing (at least as to certain properties like 727 Lofts), negotiating the terms of the Insider DIP Financing with Diveroli or others, the ultimate approval of the Insider DIP Financing or related matters. Based on all the flaws noted herein with the proposed Insider DIP Financing, it appears the Proposed Independent Manager did not negotiate those terms carefully or thoroughly if he negotiated them at all.

[3] Which Court approval has not been sought yet nor have detailed disclosures regarding the same including detailed disclosures of any connections of STG LLC and Mr. Spurrier with Diveroli, any of the Debtors' professionals and other parties in interest or the compensation or indemnities STG LLC or Mr. Spurrier are proposed to receive and related matters been filed yet.

sell, transfer or otherwise dispose of any asset of the Debtor, rather of amount, (iii) borrowing money or otherwise incur any indebtedness, or guarantee any indebtedness or grant any lien or security interest securing any indebtedness, in an amount of $100,000 or more, including debtor in possession financing; or (iv) take any other action that the retention agreement or any order of the Bankruptcy Court expressly conditions upon the approval of the Independent Manager.

9.      The list above sure sounds like the duties of a Chapter 11 Trustee, which should also include additional duties like investigation and prosecution of avoidance actions and causes of action (including, without limitation, against Diveroli or any other parties involved in the pre-petition actions, including the purported deeds in lieu of foreclosure which may be subject to challenge as not being legally effective under applicable foreclosure procedures and other law, ultra vires, conversion, fraudulent transfer, etc.) and various insurance coverages including without limitation director and officer insurance of involved entities among many other items that need to be investigated or addressed.

10.     Rather than letting Diveroli and/or the YSA professional firms select post-petition their own fiduciary quasi-Chapter 11 trustee in the form of the Proposed Independent Manager, an actual independent Chapter 11 trustee for YSA selected by the applicable Office of the US Trustee after input from parties in interest should instead be making these decisions and other decisions for the YSA bankruptcy estate including negotiating with the first lien lenders and other parties adversely impacted by the YSA bankruptcy filing and tactics.  If the tactical and bad faith YSA bankruptcy case is not dismissed entirely[4], then the ongoing venue of the YSA bankruptcy case

---

[4] As set forth in Paragraphs 9 and 10 of the First Day Declaration in the YSA bankruptcy case, the total debt in this YSA case consists of asserted insider controlled debt "in the approximate amount of $467,000" and "prepetition unsecured debt [totaling] approximately $900,000.  The Debtor is owed to law firms from litigation related to the Kulick Loans (defined below)."  Contrast that with the over $17 million owed to ACRE in the 727 Lofts cases along

will impact which Office of the US Trustee should be involved in choosing the Chapter 11 Trustee including where that trustee is located.  Given the multiple issues between the YSA bankruptcy estate and the Kulick related bankruptcy estates, the Chapter 11 Trustee for YSA should be a trustee other than the currently appointed Chapter 11 Trustee for 727 Lofts and other Kulick related entities.  The two independent Chapter 11 trustees could speak and negotiate directly on the open issues and hopefully resolve them quickly without further delay and expense versus Diveroli's continued delay and leverage tactics.  That would minimize further delay in the first mortgagees realizing on their collateral or having their first lien debt repaid from sale proceeds.

11.     There are myriad of other potential landmines in the proposed terms of the Insider DIP Financing designed to (i) further impede first lien lenders exercising their remedies and rights beyond what YSA has already done to interfere with those rights, (ii) threaten default under the DIP Financing if the applicable bankruptcy judge or judges grants relief against Diveroli's individual interests, (iii) to give Diveroli rights he does not currently have to exercise remedies under the Insider DIP Financing including to lift stay on 5 days' notice to try to obtain through a bankruptcy court order title to the properties he did not properly obtain pre-petition and (iv) hinder or block the effectiveness of any ruling against YSA in the adversary proceeding and contested matters pending in the Dallas Bankruptcy Case.   All based on a solely DIP Financing "Term Sheet" – not definitive documents which may add other mischief.  For instance, as highlighted in Paragraph 12 of the Insider DIP Financing Motion:

a.     Encumbering all of the Debtors' property (presumably including Debtors' asserted

---

with mechanics lien and trade creditors in that 727 Lofts cases as reflected in the filed schedules in the two related 727 Lofts cases and the many millions of dollars owed to first mortgage holders and other creditors in the other Kulick related bankruptcy cases.  The YSA bankruptcy filing is tactical and is clearly driven by Mr. Diveroli's interests as an insider equity holder or purported pre-petition secured creditor (which leverage he is hoping to add to with additional Insider DIP Financing), not by YSA being a supposed fiduciary for its relatively *de minimis* other creditors.

rights in the 727 Lofts and other real properties which YSA purported transferred to itself by deed in lieu), even though those purported transfers are subject to pending challenges on behalf of the Kulick related debtors in the Dallas Bankruptcy Court on multiple grounds including fraudulent transfer. As noted above, this would including purporting to encumber 727 Lofts for DIP Financing advances which do not benefit the 727 Lofts Property and also encumbering the segregated 727 Lofts rents cash collateral currenting being held by YSA's property manager. Having a junior lien for the DIP Financing on 727 Lofts Property could also complicate and delay any future 363 sale and/or state court foreclosure action for the 727 Lofts Property if the automatic stay is lifted.

b. Encumbering **non-avoidance** causes of action, including, without limitation, causes of action against Diveroli or other parties involved in the purported deed in lieus or purported UCC foreclosure process on alleged equity pledges.

c. DIP Financing defaults for:

    i.     Dismissal of the YSA bankruptcy case.

    ii.     Transfer of venue of the YSA bankruptcy case to a district other than Delaware.

    iii.     Appointment of a trustee without the express written consent of DIP Lender or the filing of any motion or other pleading requesting such relief which the Debtor fails to oppose.

    iv.     Appointment of an examiner with enlarged powers without the prior written consent of the DIP Financing.

    v.     A final order is entered granting any creditor with a claim in excess of $100,000 relief from the automatic stay.

vi.   Failure to make all payments under the DIP Loan Facility when due.[5]

vii.  Any Challenge Action is commenced against **the Pre-Petition Lender** or the DIP Lender.

viii. Remedies including modifying the automatic stay to allow the DIP Lender **and the Pre-Petition Lender[6].** Presumably this would including Diveroli purporting to foreclose or transfer YSA's supposed interest in the real properties to Diveroli in his hat as Insider DIP Lender (even if subject to avoidance or challenge in the Kulick related bankruptcies such as 727 Lofts) or to limit or impede the effectiveness of relief granted in the Dallas Bankruptcy Case or other Kulick related bankruptcy cases challenging YSA's pre-petition mortgages or purported deeds in lieu.

ix.   Breach of any covenant of the DIP Facility.[7]

x.    Any representation or warranty by the Debtor is incorrect in any material respond when made.[8]

12.   Therefore, for any or all of the reasons set forth above, the Insider DIP Motion should be denied.

13.   Alternatively, the Insider DIP Motion should not be approved on even in an interim basis (under which the Insider DIP Lender would argue rights under Section 364 as to those interim

---

[5] Although the YSA Debtor has not filed its sworn schedules of assets yet, it would not appear that the YSA would have the current liquidity to pay the 12% interest rate (18% default rate) from cash on hand or from attempted use of the segregated cash collateral of the first lien lenders which ACRE would object to for 727 Lofts.

[6] No rights or acknowledgments of any nature should be given to the insider Pre-Petition Lender.

[7] Which covenants as set forth in definitive DIP loan documents are not yet disclosed and which Diveroli and his staff would control whether the covenants are breached.

[8] Note these would essentially be representations and warranties by Diveroli and his staff as YSA to Diveroli as Insider DIP Lender (i.e. to himself). Again, these representations and warranties would be set forth in the definitive DIP loan documents which have not yet been disclosed.

advances) but instead should be continued and set for a further status date at least 3 weeks out to allow time for (i) expedited discovery and depositions regarding the Insider DIP Financing and related matters, (ii) possible transfer of this YSA bankruptcy case from Delaware to another district so the assigned judge in that district can consider the proposed Insider DIP Financing afresh, (iii) other DIP financing options for YSA or the Kulick related entities without all of the pro-Diveroli terms included in this Insider DIP Financing term sheet including evaluating any property by property DIP financing for the cash needs (if any) of just that specific property, (iv) preparation of the proposed definitive documents for any DIP loan and time to review the same for objection or comment or (v) possible appointment of a Chapter 11 Trustee for YSA who can independently evaluate this proposed Insider DIP Financing and other alternatives and the YSA case and the real properties (whoever may own them) and related first mortgages in general.

**RESERVATION OF RIGHTS**

14.     ACRE otherwise reserves all other rights as to this bankruptcy case and all other matters, including, without limitation, to seek appointment of a chapter 11 trustee or other relief.

15.     ACRE also asserts that the purported deed-in-lieu of the 727 Lofts Property by YSA to itself was legally ineffective and/or avoidable.  ACRE has repeatedly asked Bayard for authority in support of that baseless position and no such support has been provided.  ACRE has not located any such authority nor have Dentons attorneys who have handled thousands of real estate foreclosures ever seen a lender purporting to deed in lieu to itself.

*[Remainder of Page Intentionally Left Blank]*

10

| | |
|---|---|
| Dated: August 12, 2026<br>      Wilmington, Delaware | **LEWIS BRISBOIS BISGAARD & SMITH LLP**<br><br>*/s/ Scott D. Cousins*<br>Scott D. Cousins (DE No. 3079)<br>Rae Ra (DE No. 7253)<br>500 Delaware Avenue, Suite 700<br>Wilmington, DE 19801<br>Telephone: (302) 295-9440<br>Email: Scott.Cousins@lewisbrisbois.com<br>       Rae.Ra@lewisbrisbois.com<br><br>-and-<br><br>**DENTONS US LLP**<br>Robert E. Richards, Esq. (admitted *pro hac vice*)<br>Samantha Siegien (admitted *pro hac vice*)<br>233 South Wacker Drive, Suite 5900<br>Chicago, IL 60606<br>Telephone: (312) 876-8000<br>Email: robert.richards@dentons.com<br>       samantha.siegien@dentons.com<br><br>*Counsel to ACRE Q018 Retention Holder, LLC* |